**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                   )
AMERICAN POSTAL WORKERS            )
UNION, AFL-CIO,                    )
                                   )
       Plaintiff,              )
                                   )
  v.                               )  Civ. Action No. 09-0237 (EGS)
                                   )
UNITED STATES POSTAL SERVICE,      )
                                   )
       Defendant.              )
_____)

**MEMORANDUM OPINION**

Pending before the Court in this Freedom of Information Act case are defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment. Upon consideration of the motions, the responses and replies thereto, the applicable law, the entire record, and for the reasons set forth below, the defendant's motion for summary judgment is **GRANTED**. Plaintiff's cross-motion for summary judgment is **DENIED**.

**I.    BACKGROUND**

Plaintiff, the American Postal Workers Union, AFL-CIO, requested information from the United States Postal Service (the "Postal Service") under the Freedom of Information Act ("FOIA") by letter dated September 10, 2008. In particular, plaintiff requested "the most recent Pay for Performance bonus and/or pay increases . . . contain[ing] the following information: finance number, last name, first name, middle initial, level, title, PFP

lump-sum amount, PFP wage increase." Def's Mem. Ex. J, Declaration of Jane Eyre ("Eyre Decl."), Ex. 1. Defendant denied plaintiff's request, invoking the FOIA exemptions contained in 5 U.S.C. § 552(b)(3) ("Exemption 3") and 5 U.S.C § 552(b)(6) ("Exemption 6"). Eyre Decl., Ex. 2 After its administrative appeal of the agency's determination was denied, plaintiff filed this action on February 6, 2009.

## II. STANDARD OF REVIEW

The Court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or declarations, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits or declarations or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, the Court may grant summary judgment based on the information provided by the agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with

2

reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (agency affidavits must be "relatively detailed and non-conclusory"). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Services, Inc.*, 926 F.2d at 1200 (quoting *Ground Saucer Watch, Inc. v. Central Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**III. ANALYSIS**

    **A.    FOIA**

Congress enacted FOIA to "open[] up the workings of government to public scrutiny through the disclosure of government records." *Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984) (quotation omitted). Although FOIA is aimed toward "open[ness] . . . of government," *id.*, Congress acknowledged that "legitimate governmental and private interests could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (citations and quotations omitted). As such, pursuant

3

to FOIA's nine exemptions, an agency may withhold requested information. 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552(b)(1)-(9). However, "[b]ecause FOIA establishes a strong presumption in favor of disclosure . . . requested material must be disclosed unless it falls squarely within one of the nine exemptions carved out in the Act." *Burka v. U.S. Dep't of Health and Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (citations omitted).

**B.   Defendant's Invocation of Exemption 3**

Exemption 3 permits an agency to withhold information that is "specifically exempted from disclosure by statute," provided that the statute either (i) "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue"; or (ii) "establishes particular criteria for withholding or refers to particular types of matters to be withheld[.]" 5 U.S.C. § 552(b)(3). Determining whether Exemption 3 has been properly invoked requires a two-step analysis. First, the Court must determine whether "the statute in question [is] a statute of exemption as contemplated by exemption 3" and, second, whether "the withheld material satisf[ies] the criteria of the exemption statute[.]" *Fitzgibbon v. CIA*, 911 F.2d 755, 761 (D.C. Cir. 1990) (citing *CIA v. Sims*, 471 U.S. 159, 167 (1985)); *see also Larson v. Dep't of State*, 565 F.3d 857, 868 (D.C. Cir. 2009) ("under Exemption 3 the [agency] need only show that the statute claimed is one of exemption as

contemplated by Exemption 3 and that the withheld material falls within the statute.")

Under Exemption 3, "only explicit nondisclosure statutes that evidence a congressional determination that certain materials ought to be kept in confidence will be sufficient to qualify[.]" *Irons & Sears v. Dann*, 606 F.2d 1215, 1220 (D.C. Cir. 1979). In the instant case, defendant relies upon 39 U.S.C. § 410(c)(2) in support of its claim that it is permitted to withhhold the information requested by plaintiff. Under § 410(c)(2) the Postal Service is not required to disclose "information of a commercial nature, including trade secrets, whether or not obtained from a person outside the Postal Service, which under good business practice would not be publicly disclosed." 39 U.S.C. § 410(c)(2).

As a threshold matter, the parties agree that § 410(c)(2) is a statute of exemption as contemplated by Exemption 3. The parties disagree, however, on whether the requested information falls within the scope of § 410(c)(2). In support of its position that the requested information is covered by § 410(c)(2), defendant has submitted the declaration of Jane Eyre, the Manager of the Records Office of the Postal Service. Ms. Eyre explains that the Pay for Performance ("PFP") program is a "merit program" in which salary increases and/or lump sum bonuses are awarded to individuals using "a wide range of scores

5

based on an individual's performance and corporate/unit indicators." Eyre Decl. ¶ 10. According to Ms. Eyre, the PFP program is "unlike most other government programs, where salary increases are based in large part on cost of living allowance (COLA) and time in service. The PFP program is grounded in the USPS mandate to provide service in a competitive marketplace and create a performance based culture." Eyre Decl. ¶ 10.

Plaintiff makes two arguments against the application of Exemption 3 to the information it has requested. First, it argues that the requested information is not "of a commercial nature" within the meaning of § 410(c)(2). Second, plaintiff argues that "good business practices" would not prevent the disclosure of the requested information. The Court will address each argument in turn.

### i. Information of a Commercial Nature

Defendant asserts that the PFP information is "of a commercial nature" within the meaning of § 410(c)(2) because the information "is used to place a numeric value on employees for purposes of making employee staffing decisions, which in effect are labor decisions with underlying commercial and financial implications." Def's Reply Mem. at 4 (citing to Second Declaration of Jane Eyre, hereinafter "Second Eyre Decl.", ¶ 3). Plaintiff finds fault with this analysis, asserting that "[n]owhere does the [Postal Service] demonstrate that the PFP

6

information actually has financial implications; nowhere does it explain who faces the purported financial implications; and nowhere does it detail how the financial implications could arise." Pl.'s Reply Mem. at 5. The Court finds this assertion unpersuasive.

The Postal Service has promulgated regulations containing a non-exhaustive list of information that is to be considered commercial in nature. Among other types of information, the regulations state that "[r]ecords compiled within the Postal Service which would be of potential benefit to persons or firms in economic competition with the Postal Service" are commercial in nature and therefore exempt from mandatory disclosure. 29 C.F.R. § 265.6(b)(3)(vi).

Under § 410(c)(2) and its accompanying regulation, courts have allowed the Postal Service to withhold various types of information using Exemption 3. *See, e.g.*, *Wickwire Gavin, P.C. v. U.S. Postal Serv.*, 356 F.3d 588 (4th Cir. 2004) (agency properly withheld portions of a contract between the Postal Service and a supplier of packing supplies that contained quantity and pricing information); *Reid v. U.S. Postal Serv.*, No. 05-294, 2006 U.S. Dist. LEXIS 45538 (S.D. Ill. July 5, 2006) (agency properly withheld the financial reports of the Postal Service, as well as the postage statements – containing information related to the sender, the category of mail, the

weight of the package, the total postage amount, etc. – of a third party to whom the Postal Service granted a permit); *Airline Pilots Ass'n, Int'l v. U.S. Postal Serv.*, No. 03-2384, 2004 U.S. Dist. LEXIS 26067 (D.D.C. June 24, 2004) (agency properly withheld redacted portions of an agreement between the Postal Service and the Federal Express Corporation relating to the shipment of certain items); *Robinett v. U.S. Postal Serv.*, No. 02-1094, 2002 U.S. Dist. LEXIS 13779 (E.D. La. July 24, 2002) (agency properly withheld material reflecting the Postal Service's evaluation of plaintiff's employment application).[1]

Not only does the type of information requested by plaintiff fall within the scope of 29 CFR § 265.6(b)(3)(vi) because it is information that "would be of potential benefit to persons or firms in economic competition with the Postal Service," the Court also concludes that the information is commercial under a common understanding of the word. *See e.g.*, *Carlson*, 504 F.3d at 1129 (holding that "information is commercial if it relates to commerce, trade, or profit") (citation omitted); Merriam-

---

[1] By comparison, the Ninth Circuit in *Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1128 (9th Cir. 2007), held that "[p]ost office names, addresses, telephone numbers, hours of operation and final collection times are not 'information of a commercial nature,' and, therefore, are not within the scope of § 410(c)(2)." Similarly, the District Court of the Northern District of Texas held that the Postal Service improperly withheld the names and duty stations of employees of the Postal Service. *Nat'l Western Life Ins. Co. v. U.S.*, 512 F. Supp. 454, 462 (N.D. Tex. 1980)

8

Webster's Collegiate Dictionary, Tenth Ed. (1998) (defining the word "commercial", in part, as "occupied with or engaged in commerce or work intended for commerce;" "viewed with regard to profit;" or "emphasizing skills and subjects useful in business.")

Plaintiff has requested that the Postal Service disclose information containing the agency's decisions regarding bonuses and salary increases for its employees. The Postal Service's decisions regarding lump-sum bonus and salary increases are based on individual, unit and corporate performance indicators devised by the Postal Service and reflecting the agency's efforts to "improve customer service, generate revenue, manage costs and enhance a performance-based culture." Second Eyre Decl. Ex. 1 at 1. The Court, therefore, agrees with defendant that such data is properly considered commercial information.

### ii. Good Business Practice

Plaintiff also argues that the fact that defendant "presents no evidence that the aforementioned disclosures have ever placed [the Postal Service] at a competitive disadvantage or caused private companies to hire away [Postal Service] workers creates the presumption that disclosing the requested information meets the good-business-practice standard." Pl.'s Opp'n at 12.

Plaintiff, however, by focusing on the question of competitive disadvantage, fails to apply the correct analysis to

9

the question of whether good business practice would prevent the disclosure of the information. The existing case law that addresses this issue makes clear that a determination of whether the disclosure of particular information would be a "good business practice" does not rest on a conclusion of competitive disadvantage to the Postal Service; instead, courts look to the common practices of other businesses. *See, e.g.*, *Wickwire Gavin*, 356 F.3d at 594 ("In determining whether Exemption 3 applies, it is uncontroverted that the statutory term 'good business practice' should be decided with reference to what businesses normally do"); *Airline Pilots Ass'n*, No. 03-2384, 2004 U.S. Dist. LEXIS 26067, at *19 ("The contours of the good business practice exemption are to be gleaned by looking to the commercial world, management techniques, and business law, as well as to the standards of practice adhered to by large corporations." (internal quotations omitted)); *Robinett*, No. 02-1094, 2002 U.S. Dist. LEXIS 13779, at *15-16 ("to determine what constitutes 'good business practice,' the agency can refer to business law and recommended management techniques in the commercial world"); *Reid*, No. 05-294, 2006 U.S. Dist. LEXIS 45538, at *17 ("Whether an action is considered a good business practice can be 'ascertain[ed] by looking to the commercial world, management techniques, and business law, as well as to the standards of

practice adhered to by large corporations.'" (citing *Nat'l Western*, 512 F. Supp. at 459)).

Indeed, even plaintiff recognizes that § 410(c)(2) was adopted as part of the Postal Reorganization Act, a statute that was designed, in part, to "eliminate outmoded legislative, budgetary, financial and personnel policies so that [the Postal Service] could employ modern management and business practices[.]" Pl.'s Mem. at 6 (citing *Carlson*, 504 F.3d at 1127); *see also Franchise Tax Bd. v. U.S. Postal Serv.*, 467 U.S. 512, 519-520 (1984) ("In passing the Postal Reorganization Act of 1970. . . . Congress also indicated that it wished the Postal Service to be run more like a business than had its predecessor, the Post Office Department.") Therefore, in determining whether it would be good business practice to disclose requested commercial information, the Postal Service should be expected to evaluate the information in the same manner as a corporation in the commercial world.

The statements of defendant's declarant, Ms. Eyre, provide sufficient, non-conclusory support for defendant's position that the information requested is not generally released by businesses in the private sector. In particular, Ms. Eyre states that:

> The PFP program is grounded in the Postal Service mandate to provide service in a competitive marketplace and create a performance-based culture. The PFP program helps the Postal Service attract applicants and retain employees through performance-based incentives. Disclosing details about, and the amounts paid in

11

>        connection with, the PFP program would allow
>        competitors to mirror these incentives and draw away
>        talented employees, thereby harming the Postal
>        Service's ability to remain competitive. . . . With the
>        exception of the top level executives of publicly
>        traded firms, private businesses do not routinely
>        disclose detailed salary information to the public.

Eyre Decl. ¶¶ 13-14.

The Court finds this statement persuasive, and plaintiff offers no evidence contradicting the agency's contention that private sector delivery firms would not disclose this information. *See Wickwire Gavin*, 356 F.3d at 594 ("[Plaintiff's] failure to build any record whatsoever concerning the business practice of [the Postal Service's] competitors is fatal."). Moreover, even accepting plaintiff's position that commercial information must be disclosed unless it places the Postal Service at a competitive disadvantage, the outcome would be the same.

Finally, to the extent that plaintiff argues that the release by the Postal Service in prior years of similar information requires the disclosure of the currently requested information, the Court also disagrees. Defendant has persuasively demonstrated that the content of previously released materials was substantively different than the information plaintiff now requests. *See* Second Eyre Decl. ¶¶ 7-8 ("While [the Postal Service] has previously released Economic Value Added ("EVA") information, it has not previously released PFP information for the performance system now in place. EVA differs

12

from PFP in that while EVA was a performance-based pay program, it was team-based whereas PFP is an individual incentive program.")

Furthermore, "while it is generally true that the government bears the burden of proving that its withholding of information is justified by one or more of the [FOIA] exemptions, a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983) (citing *Casey*, 656 F.2d at 741-45). For the reasons set forth above, plaintiff has failed to demonstrate that the information requested is the "duplicate" of information that is already in the public domain.

### C. Defendant's Invocation of Exemption 6

Because defendant properly withheld the requested documents under Exemption 3, the Court declines to address whether Exemption 6, permitting an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), would also apply.

### D. Segregability

An agency claiming an exemption is required to provide "any reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b); *see also Mead*

13

*Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) ("[I]t has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.")

Defendant has asserted that there is no reasonably segregable material in the PFP information. Def.'s Mem. at 8. Although plaintiff has not challenged this determination, "it is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability." *Kimberlin v. DOJ*, 139 F.3d 944, 950 (D.C. Cir. 1998) (quoting *Schiller v. NLRB*, 964 F.2d 1205, 1210 (D.C. Cir. 1992)); *see also Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999) ("[T]he District Court had an affirmative duty to consider the segregability issue sua sponte.")

In light of plaintiff's lack of objection to defendant's assertion of non-segregability and the narrow category of information requested by plaintiff, namely records containing a list of lump-sum bonuses and salary increases for employees of the Postal Service, the Court agrees with the agency that there is no segregable portion of the records.

**IV. CONCLUSION**

For the foregoing reasons, it is hereby ordered that defendant's motion for summary judgment is **GRANTED;** and

plaintiff's cross-motion for summary judgment is **DENIED**.  An appropriate Order accompanies this Memorandum Opinion.

    **SIGNED:**    **Emmet G. Sullivan**
                     **United States District Court Judge**
                       **September 30, 2010**